**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| SAM HOUSTON | § | |
| | § | |
| V. | § | NO. 1:16-CV-986-LY |
| | § | |
| MARIE GONZALES, et al. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before this Court are the following motions, and their associated responses and replies:

- Motion to Dismiss by United States and U.S. Department of Veterans Affairs (Dkt. No. 27);

- Motion to Dismiss by Individual Federal Defendants Catherine Williams and Andrew Miller (Dkt. No. 28);

- Defendants Nuckols Crossing Partners, Ltd. and Marie Gonzalez's Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6), and, Subject Thereto, Answer (Dkt. No. 33);

- Defendant Travis County's Motion to Dismiss Pursuant to 28 U.S.C. § 1915(e)(2) and Motion for Costs Pursuant to 1915(f) (Dkt. No. 34);

- Defendant Lisa Garcia's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 38);

- Defendant Housing Authority of the City of Austin's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 44);

- Plaintiff's Motions for Summary Judgment (Dkt. Nos. 40, 41, 42, & 47);

- Plaintiff's Motions for Entry of Default Judgment (Dkt. Nos. 31 & 32); and

- Plaintiff's Motion for Preliminary Injunction (Dkt. No. 54).

The District Court referred the above motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), Fed. R. Civ. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

This case began when  George "Sam" Houston—a disabled veteran and constant litigant in this and other courts—applied in 2014 for benefits from the Housing Authority of the City of Austin (HACA).  The benefits at issue are provided by a program run jointly by the Department of Veteran Affairs and the Department of Housing and Urban Development.[1]  The program, named Veterans Affairs Supportive Housing, or "HUD-VASH," offers vouchers to qualifying agencies (PHA's).  *Id.* The PHA then distributes the vouchers to the veterans.  HUD-VASH Eligibility Criteria, U.S. Dep't of Veteran Affairs, http://www.va.gov/homeless/hud-vash_eligibility.asp (last visited Dec. 2, 2016).  Before a PHA can offer the services to a veteran, a VA caseworker determines whether the veteran is eligible, based on factors such as:  a history of serious mental illness, substance abuse, or disability.  *Id.*   Then, after a veteran has been referred, the PHA makes the final eligibility determinations based on income.  *Id.*   The VA then provides case-management services to the veteran and his family.  Dkt. No. 28 at 2.  HACA is one of many entities in Texas authorized to distribute the housing vouchers.

Houston qualified for assistance through this program, and he and his wife moved into an apartment owned by Nuckols Crossing, Ltd.  At first, Houston contributed $95 per month toward the rent, with HACA paying the remaining amount.  However, after a year in the program, HACA

---

[1] *See* HUD-VASH Vouchers Overview, Dep't of Housing and Urban Affairs, http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/hcv/vash (last visited Dec. 2, 2016).

increased Houston's portion, when it corrected a mistake in its calculation of his income.  HACA

notified Houston of this change, and informed him of his right to appeal this decision.  Over the next

six months, the portion of the rent he was responsible for increased to $299 per month.  In November

2015, Houston stopped paying his portion of the rent.  HACA continued to pay its portion but this

did not fully cover the rent.  After a number of letters and calls, Nuckols Crossing instituted eviction

proceedings in Travis County Justice Court 4.  At around the same time, Houston appears to have

appealed his income determinations in a HACA administrative hearing.  In both the eviction

proceedings and the HACA administrative hearing, Houston attempted to subpoena Catherine

Williams, a VASH coordinator at the VA.  Pursuant to VA regulations, the government sent Houston

a notice stating that Williams would not be required to appear in compliance with the subpoena.  The

jury in Houston's eviction case found in favor of Nuckols Crossing and the court ordered his

eviction.  Houston appealed this decision to the Travis County District Court.[2]  While the appeal was

pending, Houston filed the instant case, also in Justice Court 4.

Initially, Houston sued only Nuckols Crossing, Marie Gonzalez (an employee of Blazer Real

Estate who supposedly contacted Houston about his eviction), and Dylan Shibutz (an employee of

HACA).  Shortly after he filed suit, he added a number of parties including Lisa Garcia (Vice

President of Assisted Housing at HACA), the VA, Catherine Williams (VA employee), her

supervisor Andrew Miller, Travis County, and HACA.  When Houston added the federal defendants

(the VA, Williams, and Miller), the United States intervened and removed the case to federal court.

---

[2]Houston removed the eviction case to this Court following the removal of the instant case.
It was remanded back to Court Court at Law No. 1 on December 9, 2016, based on the undersigned's
recommendation.  Dkt. No. 21, *Nuckols Crossing, LTD v. Houston*, No. 1-16-CV-1064 (W.D. Tex.,
Dec. 9, 2016).

Houston's rambling pleading alleges all sorts of things, but his suit boils down to one fact: his rent payments increased and he believes that this is unfair. His pleadings, though mostly unintelligible, seem to assert that the defendants jointly conspired to tortiously interfere with either (1) his contract with Nuckols Crossing or (2) the agreement with HACA. Additionally, Houston complains his constitutional rights were violated based on William's failure to comply with the subpoena. These two fact patterns are the basis for the entire list of claims provided in his Complaint, which, liberally construed, appears to allege: tortious interference with a contract; violations of the First, Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments; negligence and negligent hiring or supervision; harassment and retaliation under Texas Property Code; failure to provide adequate medical mental health attention; violations of the Texas Tort Claims Act; and violations of various provisions of the Texas Constitution.

At its heart, Houston's entire case hinges on what Houston contends was the miscalculation of his income—a question within the jurisdiction of the HACA, and completely outside of this Court's purview. Therefore, as explained below, the Court RECOMMENDS that the District Judge DISMISS all of Houston's claims.

## II. LEGAL STANDARD

### A.      Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional

power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B.     Rule 12(b)(6)**

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

Finally, Although this Court construes the briefs of *pro se* litigants liberally, a *pro se* litigant must still comply with the court rules of procedural and substantive law. *Bird v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *See also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation marks and citations omitted), *cert. denied*, 537 U.S. 1200 (2003).

### III. ANALYSIS

#### A.    Jurisdiction

The defendants make a number of separate arguments that the Court lacks jurisdiction. Courts must consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161. Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from  prematurely dismissing a case with prejudice." *Id.* Therefore, these arguments are addressed first.

#### 1.    Claims Against the United States and VA employees

Houston sued Williams and Miller, both employees of the VA, for various tort and Section 1983 claims. Under the Westfall Act, the United States may intervene in any civil action against an employee "acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). After  determining whether the employee was acting within the scope of her employment, the Attorney General will certify this fact, and the action is to be deemed as against the government itself, rather than the employee, with the United States substituted into the case in place of the federal employee. Here, the United States certified that Williams and Miller were acting within the scope of their employment for the actions forming the

basis of Houston's suit.  Dkt. No.1-4.  Therefore, all claims arising in tort against Williams and Miller are to be deemed as against the United States. However, this does not apply to the allegations of constitutional violations by Williams and Miller.  28 U.S.C. § 2679(b)(2)(A).

The next step is that, because the United States has certified that both Williams and Miller were acting within the scope of their employment, the tort claims originally brought against Williams and Miller (the claims for negligence, negligent supervision or training, and tortious interference) are converted to claims against the United States under the Federal Tort Claims Act.  This is because the *only* way one may bring a tort claim against the U.S. government is to sue under the FTCA, as it is the only statute that has abrogated the United States' sovereign immunity for tort claims.  *See, e.g. Houston v. U.S. Postal Service*, 823 F.2d 896, 898 (5th Cir. 1987);  28 U.S.C. § 2675(a).  There are several prerequisites to suing under the FTCA.  The most important is that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing."  *Id.*  The Supreme Court has interpreted this provision to "require complete exhaustion of Executive remedies before invocation of the judicial process." *McNeil v. U.S.*, 508 U.S. 106, 112 (1993).  Here, the United States certified by affidavit that the VA has no record of any administrative proceedings instituted by Houston on this matter.  Dkt. No. 27-1.  As such, Houston has not exhausted his administrative remedies, and he cannot bring tort claims against the government (or its employees).  Houston's claims for negligence, negligent supervision/training, and tortious interference against both the VA and the United States should be dismissed.

Further, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471,475 (1994).  The Supreme Court has held that

neither the FTCA nor a *Bivens* action abrogates the sovereign immunity of the federal government or its agencies for claims arising under the Constitution. *Id.* at 477-78, 485-86. Therefore all constitutional claims brought against the VA—though it is unclear from Houston's pleadings whether any have been—should be dismissed.

### 2. Remaining Claims Against Williams and Miller

Houston also appears to raise a number of constitutional claims against Williams and Miller. As federal officials, Williams and Miller are entitled to qualified immunity. For all claims against the defendant individually, the doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[3] Immunity in this sense means immunity from suit, not merely from liability. *Jackson v. City of Beaumont*, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend County*, 58 F.3d 173, 174 (5th Cir. 1995). To overcome qualified immunity, the plaintiff must show: (1) a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir.2008). In the context of a motion to dismiss, a plaintiff must state facts in the complaint which, if proven, would overcome the qualified immunity defense. *Babb v. Dorman*, 33 F.3d 472, 476 (5th Cir. 1994).

---

[3]"[I]t would be 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under [42 U.S.C.] § 1983 and suits brought directly under the Constitution against federal officials.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 809 (1982) (quoting *Butz v. Economou*, 438 U.S. 478, 504 (1978)). Therefore, the qualified immunity analysis is the same for both federal and state officials.

First, all claims against Miller should be dismissed.  To state a claim against a public official in their individual capacity, a plaintiff must allege that while acting under color of law a defendant was personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that the defendant's wrongful actions were causally connected to such a deprivation.  *James v. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).  A supervisor cannot be held personally liable "for his subordinate's actions in which he had no involvement." *Id.*  Because vicarious liability is inapplicable, a plaintiff must plead that each government official, through the official's own individual actions, has violated federal law.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2008).  Houston brings no claims against Miller individually, instead contending that Miller is responsible for Williams's actions under the doctrine of respondeat superior.  Therefore, all remaining claims against Miller should be dismissed.

Next, Houston's claims against Williams should also be dismissed.  Houston alleges that Williams violated the First, Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments.[4]  The basis for these violations relies mainly on Williams's failure to comply with a subpoena and an unspecified form of retaliation.  Neither of these claims provides the basis of a constitutional violation.  First, in no way has Houston alleged any facts that would result in a violation of his right to free speech, petition, assembly, or religion.  Moreover, "to state a backward-looking denial of access claim, plaintiffs must show, among other things that they have been completely foreclosed from meaningfully pursuing their underlying claims." *Broudy v. Mather*, 460 F.3d 106, 121 (D.C. Cir. 2006) (internal quotations omitted).  Houston has failed to show that Williams's absence

---

[4]Houston also sues multiple defendants, including Williams, for conspiracy under Section 1983 for interference with contract and "disclosing clearly erroneous computations" of his income. This claim is addressed below, though Williams is entitled to qualified immunity on that claim also.

"completely foreclosed" his ability to pursue his claims.  Second, Houston states that Williams retaliated against him and harassed him with "Retaliatory Force" in violation of the Fourth Amendment.  It is unclear what, if any, force was used against Houston.  Instead, it appears that his eviction is the basis for his harassment claim.  This is clearly not a violation of the Fourth Amendment.  Similarly, Houston alleged no violation of the Eighth Amendment, instead only making the conclusory statement that Williams violated the "privileges and immunities" of the Eighth Amendment.  Finally, the Fourteenth Amendment applies to state, not federal, action.

The Fifth and Seventh Amendment arguments seem to be the main crux of his argument. Houston appears to allege that by failing to comply with the subpoena, Williams violated his due process rights and his right to a fair trial.   The Seventh Amendment clearly does not apply here as compliance with a subpoena does not affect a person's right to a trial by jury.  With regard to Houston's due process argument, the Supreme Court has upheld regulations that govern when a federal employee may testify.  *United States, ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  Here, the VA notified Houston that Williams would not be required to appear pursuant to its *Touhy* regulations.  *See* Dkt. No. 28 at 10; *see also* 38 C.F.R. 14.80-.810 (regulating when VA employee may testify).  As the regulations are constitutional, Williams did not violate Houston's due process rights by acting pursuant to the VA's *Touhy* regulations.  Similarly, Houston's related allegation that unnamed defendants conspired to prevent Williams from appearing at his trial also fails, since there is no cognizable constitutional claim against Williams.

### 3.    Travis County

In addition to suing individually-named defendants, Houston also sues Travis County, Texas. However, a political subdivision cannot be held responsible for a deprivation of a constitutional right

merely because it employs a tortfeasor.  In other words, a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior.  *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).  Houston sues Travis County as the supervisor of the county courts, likely because he cannot sue the judges, as they are protected by judicial immunity.  *Stump v. Sparkman*, 435 U.S. 349 (1978) (holding that judges have immunity for judicial acts).  Houston cannot get around this rule by suing the County.  *Johnson*, 958 F.2d at 94. Houston also attempts to hold Travis County responsible for actions taken by the VA and the HUD-VASH program.  This is clearly incorrect as Travis County does not supervise either the city-run housing program or the federal agency.  Thus, all claims against Travis County should be dismissed.

**C.     Failure to state a claim**

The remaining claims are against Williams, Garcia, HACA,[5] Gonzalez, and Nuckols Crossing.  Houston's Amended Complaint includes a claim, apparently against each of these defendants, for Section 1983 conspiracy to tortiously interfere with his contract, failure to provide medical care, retaliation/harassment based on Texas property law, negligence/negligent supervision or training , and claims under both the Texas Tort Claims Act and the Texas Constitution.  Each of these should be dismissed.

---

[5]HACA also moved to dismiss pursuant to FED. R. CIV. P. 12(b)(2) and 12(b)(5) alleging that it was never properly served.  From the record, it is clear that summons were never issued for HACA.  However, dismissal for insufficient service of process "is not appropriate unless there is no reasonably conceivable means of acquiring jurisdiction over the person of a defendant." *Bowman v. Sanofi-Aventis U.S.*, 2009 WL 5083431 (W.D. Tex. Apr. 16, 2009) (internal quotations omitted). There is no reason that this Court would not be able to obtain personal jurisdiction over HACA if properly served.  Moreover, Garcia (Vice President of Assisted Housing at HACA) was properly served and has participated in this suit since the beginning, so HACA had notice of the suit.

### 1.      Conspiracy to Tortiously Interfere with a Contract/ Tortious Interference

First, Houston alleges that the "defendants" (he does not specify which) conspired to interfere with a contract to which he was a party.  Such a claim requires proof of "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of America v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Houston's claim fails for a number of reasons.  First, Houston never identifies the contract with which the defendants are alleged to have tortiously interfered.  Second, even assuming that Houston is referring to either (1) his agreement with HACA to use the housing voucher program, or (2) his lease with Nuckols Crossing, he fails to allege any set of facts which could support a willful and intentional act of interference.  Instead, he merely argues that Williams provided incorrect income information to HACA.  But even an incorrect calculation of his income cannot support the willful and intentional aspect of this claim.  Additionally, as noted previously, the Court has no jurisdiction over Houston's tortious interference claim against Williams, as he failed to exhaust his administrative remedies prior to suit.  Moreover, Houston fails to allege any facts to support his claim that a federal agency, municipal agency, and private apartment company conspired to tortiously interfere either with his entitlement to benefits under the HUD-VASH program or his lease with Nuckols Crossing.  Therefore, his claims against all defendants for conspiracy to tortiously interfere and tortious interference should be dismissed.

### 2.      Failure to provide medical care

Houston appears to claim that unspecified defendants failed to provide him medical care after his eviction.  This argument also fails.  The State generally does not have a duty "to protect an

12

individual against private violence." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). However, when "a special relationship exists between the state and individual," the state may be responsible for certain protections. *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997) (citing *DeShaney*, 489 U.S. at 199-200). Houston attempts to argue that the defendants had a "special relationship" with him that resulted in this duty. However, in order for any of the defendants to have established a "special relationship" by which they might be bound to provide Houston medical care, he would need to be in government custody. *Id.* (noting that the use of state-subsidized housing or outpatient services does not result in "involuntary confinement" by which a special relationship might develop). Eviction, even from housing provided in part by state funding, does not establish the "special relationship" necessary.

### 3.     Retaliation and Harassment

Houston also alleges that Nuckols Crossing and Gonzalez violated various provisions of the Texas Property Code and Texas Penal Code. First, he alleges that they filed a retaliatory eviction proceeding "in bad faith." TEX. PROP. CODE ANN. §§ 92.004 and 92.331. However, prosecution of an eviction proceeding for failure to pay rent is not retaliation. TEX. PROP. CODE ANN. § 92.332(b)(1). Moreover, Houston failed to allege any other facts that would support a claim of retaliation. Second, Houston alleges harassment[6] under the Texas Penal Code, but the section he relies upon is a criminal statute and not a basis for a civil action. TEX. PENAL CODE ANN. § 42.07 (West 2015).

---

[6]Houston also appears to allege a claim for assault/battery, but again provides only a conclusory statement that he was harassed.

13

### 4.      Negligent Supervision/ Negligence

Houston next claims that Nuckols Crossing[7] failed to adequately train and/or supervise their employees.[8]   To establish a claim of negligent supervision, Houston must show that "(1) [the defendant] owed him a legal duty to supervise its employees, (2) [the defendant] breached that duty, and (3) that breach proximately caused his injuries."   However, Houston has failed to provide more than mere "labels and conclusions."  *Twombly*, 550 U.S. at 555.   Instead, he contends that the defendants failed to screen, failed to train, failed to supervise, and negligently retained the employees even with knowledge of an unspecified danger posed to the tenants or tenant programs. These conclusory allegations provide no factual basis by which this Court may sustain the claims. Therefore, Houston's negligence/negligent supervision claims should also be dismissed.

### 5.      Texas Tort Claims Act

Houston alleges that Nuckols Crossing, Gonzalez, HACA, and Garcia violated the Texas Tort Claims Act.   However, he fails to state any provision that the actors would have violated, instead relying on the statute as a whole.   TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2015).  Additionally, Nuckols Crossing and Marie Gonzalez are private, not state actors, and the Act does not apply to them.  *Id.*

### 6.      Claims under the Texas Constitution

Finally, Houston attempts to allege violations of numerous provisions of the Texas Constitution.  However, "Texas has no provision comparable to § 1983."  *City of Beaumont v.*

---

[7]Houston also makes identical claims against Travis County and the VA.  However, as discussed previously, these claims should be dismissed.

[8]Houston's negligence claim appears to be the same as his negligent supervision or training claim.

14

*Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995).  Therefore, there is no "independent cause of action for damages" for violations of the Texas Constitution.  *Id.* at 150.

## IV. PLAINTIFF'S REMAINING MOTIONS

As noted at the outset, Houston has filed numerous motions of his own, seeking summary judgment, entry of default, and a preliminary injunction.  Dkt. Nos. 31, 32, 40, 41, 42, 47, and 54. As this Court has recommended dismissal of all Houston's claims, these motions are moot and they should all be dismissed.

## V. SANCTIONS

This is not Houston's first frivolous lawsuit.  *See, e.g.*,  *Houston v. Bank of America, N.A.*, et al., No. 1:15-CV-570 RP, Dkt. No. 11 (warning Houston of possible sanctions if he continues to file frivolous suits); *Houston v. Bank of America*, No. 1:13-CV-299 LY; *Houston v. Senseki*, No. 1: 13-CV-097 LY.   Houston has been warned on at least two occasions that he would be subject to sanctions if he continued to file frivolous law suits.  Therefore, this Court recommends the District Judge, after adopting this Report and Recommendation, return this case to the undersigned for proceedings for Houston to show cause why sanctions should not be imposed against him.

## VI. RECOMMENDATIONS

In accordance with the foregoing discussion, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motions to Dismiss (Dkt. Nos. 27, 28, 33, 34, 38 & 44), and recommends that the claims against the VA, and all tort claims against Miller and Williams or the United States, be **DISMISSED FOR LACK OF JURISDICTION,** and that all remaining claims against all of the other Defendants be **DISMISSED WITH PREJUDICE** for failure to state a claim. Lastly, the Court **RECOMMENDS** that following the District Court's adoption of this Report and

Recommendation, this case be **REFERRED** back to the undersigned to initiate proceedings for sanctions against Houston.

## VII.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-1429 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 16th day of December, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE