# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **SAM HOUSTON** | § | |
| | § | |
| **VS.** | § | **NO. A-16-CV-986 LY** |
| | § | |
| **MARIE GONZALEZ, et al.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Sam Houston's Response to Order to Show Cause (Dkt. No. 86). The District Court referred the above case to the undersigned Magistrate Judge for report and recommendation  pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. BACKGROUND

Plaintiff George Sam Houston has a long history of litigiousness in the Western District of Texas. The instant action is one of ten cases Houston has brought since 2012.  Acknowledging this history, the Court issued a Show Cause Order to Houston following the dismissal of all of the claims in his most recent case, to address whether he should be sanctioned for his continued frivolous filings.  A brief history of his past cases is warranted here.

Houston began his foray into the federal courts when he complained of the care provided by the Department of Veterans Affairs' (VA) medical centers. *Houston v. Seneski*, No. 1:15-CV-015, Dkt. No. 1-1 at 1 (W.D. Tex. Jan. 6, 2012).  Here, Houston appeared to argue that Eric Seneski, then Secretary of the Veteran's Administration, was responsible for the allegedly inadequate mental heath treatment he received at one of the clinics for his post-traumatic stress disorder (PTSD).  Houston further claimed that his veterans disability payments were incorrect.  This first suit was dismissed

as frivolous, but even after dismissal, Houston continued to file a number of motions in the case, including a Motion to Amend, Motion for Recusal of Judge Yeakel for bias, Motion to Respond, and a Motion for New Trial, all of which were denied. Rather than accepting the court's determination, Houston filed a second case against Seneski making similar—though not identical—arguments. *Houston v. Seneski (Seneski II)*, No. 1:13-CV-097, Dkt. No. 4 at 4 (W.D. Tex. Apr. 8, 2013). In addition to adding a number of other defendants, Houston once again complained of the medical care he received at the VA centers, but this time couched his claims as various constitutional and statutory violations. Once again, the Court found Houston's claims to be frivolous and the lawsuit was dismissed.

At this point, Houston turned his attention to other matters. It appears that Houston's home had been foreclosed on and sold to a new owner; this set of facts was at the heart of Houston's next five lawsuits. Houston first sued the Bank of America (among other defendants) for torture, cruel, inhuman and degrading treatment, wrongful taking of property, and infliction of emotional distress—all based on claims that the bank allegedly wrongfully foreclosed on and sold his property. *Houston v. Bank of America, N.A. (I)*, No. 1:13-CV-299-LY, Dkt. No. 39 (W.D. Tex. July 16, 2013). Houston had originally filed suit in state court, but the defendants removed to federal court. Upon motion by the defendants, Houston's suit was dismissed for failure to state a claim. Shortly after, Houston joined his wife, Meera Singh, as they attempted to remove a case to federal court in which they were the plaintiffs. This suit sought to relitigate Bank of America's authority to enforce a lien on the property. *Singh v. Bank of America, N.A.*, No. 2:13-CV-0030-AM, Dkt. No. 12 (W.D. Tex. Aug. 27, 2013). As Houston and Singh had improperly removed the case, it was remanded to state court.

This did not deter Houston, as he once again joined his wife in filing a suit for declaratory and injunctive relief challenging the foreclosure of his property. *Singh v. Perry*, No. 5:14-CV-199-FB, Dkt. No. 9 (W.D. Tex. Apr. 23, 2014). However, as the court in that case noted, Singh had previously brought three prior suits—solely on her own behalf—on the exact same claims, all of which had been dismissed as frivolous. *Id.* at 2–3; *see Singh v. Bank of America, N.A.*, 1:12-CV-0388-LY; *In re Meera Singh*, No. 1:13-CV-266-LY; *Singh v. Bank of America*, 1:12-CV-389-LY. The Court accordingly dismissed Houston's fifth action. Failing to succeed in that case, Houston and Singh attempted to remove a state court action in which the plaintiffs sought a forcible detainer—ostensibly for the property recently foreclosed upon. *Houston v. Perry*, No. 5:14-CV-549-DAE, Dkt. No. 5 (W.D. Tex. July 31, 2014).[1] The Court once again remanded, finding no federal jurisdiction. To complete this line of cases, Houston again sued the Bank of America for the fraudulent sale of his home. *Houston v. Bank of America, N.A. (II)*, No. 1:15-CV-570-RP, Dkt. No. 4 (W.D. Tex. Aug. 4, 2015). As with all of the above cases, Houston's claims were dismissed as frivolous. In that case, however, the court went one step further, warning Houston that his continued filing of frivolous actions could result in his being barred from filing further suits without judicial permission. *Id.*, Dkt. No. 11 at 4.

It appears that Houston, possibly after the warning, took a short recess from federal court. However, in the fall of 2016, Houston returned with two new suits in federal court. *Houston v. Gonzalez*, No 1:16-CV-986-LY; *Nuckols Crossing, Ltd.v. Houston*, 1:16-CV-1064-LY. Houston brought the instant suit alleging that the defendants conspired to violate his rights. Specifically, he

---

[1]Houston also filed a bankruptcy appeal at this time, but it was dismissed as moot. *In re Houston*, No. 1:14-CV-692-LY, Dkt. No. 9 (W.D. Tex. Sept. 10, 2014).

argued that the VA—conspiring with the Housing Authority of the City of Austin—improperly included his veterans disability income when calculating the amount of rent assistance he should receive from a voucher program funded by the Department of Housing and Urban Development (HUD). When his rent assistance was decreased—thus increasing Houston's share of the rent—Houston was unable to make his monthly rent payments and was evicted. He then filed suit alleging a variety of claims against the defendants. Houston originally filed suit in the Justice of the Peace Court in Travis County, Texas, but following the addition of VA employees, the United States removed the case to federal court. At that time, Houston also attempted to remove a related case—his appeal of the apartment management company's suit to evict him—also from the Justice of the Peace Court. *Nuckols Crossing, Ltd.*, No. 1:16-CV-1064-LY. Houston attempted to consolidate the two cases, but the second suit was remanded for lack of subject matter jurisdiction, *id.*, Dkt. No. 21, and this case was dismissed for lack of jurisdiction and failure to state a claim.

In the Court's recommendation to remand in *Nuckols Crossing, Ltd.*, Houston was once again warned of the consequences of his continued pursuit of frivolous claims. Rather than heeding this warning, Houston continued to file a number of motions and advisories in both lawsuits. As such, in the Court's recommendation to dismiss the instant suit, it requested the District Court re-refer the case after adopting the Report and Recommendation so that the Court could address sanctions against Houston. Dkt. No. 75. The Report and Recommendation was adopted on February 17, 2017, and this Court issued an order to Houston to show cause why he should not be sanctioned. Dkt. No. 85. In his response, Houston once again addressed the merits of his claims, focusing particularly on his claims of bias by Judge Yeakel, whom he had previously attempted to recuse on multiple occasions. Dkt. No. 86. In addition, he filed a report completed by a VA vocational expert

describing Houston's post-traumatic stress disorder and the effect it has on his ability to maintain work. The Court has considered the response and attached exhibits and issues the following recommendation.

## II. ANALYSIS

A court may, on its own initiative, impose sanctions under FED. R. CIV. P. 11(c)(3). Rule 11 sanctions may be appropriate when a pro se litigant has a history of submitting multiple frivolous claims. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195–97 (5th Cir. 1993). Pro se litigants have no "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson*, 808 F.2d at 359. The first inquiry in this determination is "how much havoc has this litigant wreaked on the judicial system relative to the harm inflicted by other litigants who have been sanctioned." *Birdo v. Carl*, 32 F.3d 565, *2 (5th Cir. 1994) (citing *Mendoza*, 989 F.2d at 195–97). However, "[t]he imposition of a sanction without a prior warning is generally to be avoided." *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Before imposing sanctions, the court must issue a show cause order describing the offending conduct and giving both notice and an opportunity for the party to be heard. *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1994).

Rule 11 gives courts broad discretion in determining which sanctions are appropriate in any given case. *See Thomas v. Capital Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988). The sanctions imposed should be the "least severe sanction adequate to serve the purpose." *Id.* at 878. One of the well-settled appropriate exercises of a court's power to sanction is issuing pre-filing injunctions against vexatious litigants. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (*citing Farguson v. M Bank Houson, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)). Any injunction

issued "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson*, 808 F.2d at 360. Before issuing a pre-filing injunction, a "court must weigh all the relevant circumstances," including:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum*, 513 F.3d at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390F.3d 812, 818 (4th Cir. 2004).

Houston was given both notice and an opportunity to respond to the possibility of a pre-suit injunction being entered. As noted previously, this is not the first case Houston has filed in the Western District of Texas. Houston received notice in two of his previous cases that sanctions would be imposed if he continued to file frivolous actions. *Nuckols Crossing, Ltd.*, No: 1-16-CV-1064-LY, Dkt. No. 13 at 5; *Bank of America, N.A. (II)*, No. 1:15-CV-570-RP, Dkt. No. 11 at 4–5. In *Bank of America (II)*, the court noted the four previous lawsuits regarding the foreclosure, as well as a number of state actions, stating that Houston "has clearly been notified that such cases are deemed malicious, but has nonetheless continued to seek judicial relief." No. 1:15-CV-570-RP, Dkt. No. 11 at 4. In both cases, he was therefore formally warned. This is in addition to the notice he received in the Report and Recommendation in this case, as well as this Court's Order to Show Cause. Thus, he was given sufficient notice as well as many opportunities to respond.

Further, the relevant factors weigh in favor of issuing an injunction. *See Baum*, 513 F.3d at 189. As detailed above, Houston has filed numerous previous lawsuits in this district. Five of his previous suits litigated nearly identical issues; the two most recent appeared to start this trend once

again, albeit with a different set of facts and defendants. Thus, this history of litigation clearly weighs in favor of enjoining Houston from filing more such suits in federal courts. Similarly, the history shows an intent to harass, rather than good faith pursuit of litigation. In all of the previous lawsuits, Houston's arguments have been dismissed, at times with the Court even noting that the lawsuits were malicious. *See, e.g.*, *Bank of America (II)*, No. 1:15-CV-570-RP, Dkt. No. 11 at 4. Houston continues to file meritless, frivolous lawsuits alleging vague conspiracies, which harass the defendants. Moreover, not only does he file multiple frivolous lawsuits, Houston continues to file numerous pleadings in each suit, sometimes even after the suit has been dismissed or remanded. This creates a high burden on both the opposing parties and the courts, obstructing the efficiency of the judicial system.

This point is further proved by the exhibit attached to Houston's response to the Show Cause Order. In the report created for the VA to assess Houston's ability work, the vocational expert recommended a finding of disability. The vocational expert described Houston's PTSD and the significant limits it has on his ability to function normally and maintain employment. Though the Court assumes that Houston included this as proof of his arguments that the defendants collectively conspired to improperly calculate his rent assistance, the Court reads this another way. It is further indication that Houston is a troubled disabled veteran who continues to use the federal court system to vindicate every perceived wrong, even when a ruling has already been issued. The Court sympathizes with Houston's plight and appreciates his service for our country. However, there is a need to protect the efficiency of the judicial system. This is best served by barring Houston from further frivolous litigation without the consent of a Judge in the Western District of Texas.

In discussing a pro se prisoner who had filed numerous frivolous federal suits, the Fifth Circuit once remarked, "like any other pastime, recreational litigation has its price." *Gelabert v. Lynaugh*, 894 F.2d 746, 748 (5th Cir. 1990). In that case, the court determined that it was appropriate to impose sanctions "for the very purpose of causing the . . . litigant, with time on his hands and a disposition to retaliate against the system, to think twice before cluttering our dockets with frivolous or philosophical litigation." *Id.* As noted, federal courts have the inherent power to impose sanctions against abusive and serial filers of frivolous litigation. The general rule is that in punishing misbehavior, a court should impose no more than the minimal sanctions necessary to correct the offending conduct. *In re First City Bancocorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002). The right to file suits in the federal courts is not an absolute right; Houston's abuse of that right merits some consequences, and some limitations on his ability to take advantage of his right. This Court alone has spent dozens of hours dealing with just the two most recent of his cases, to the exclusion of matters that are supposed to be the focus of the courts' work. Imposing a limit on suits Houston may file in the Western District of Texas without first obtaining permission from the court is warranted, as it imposes minimal burdens on Houston but accomplishes the goal of stemming the tide of his frivolous lawsuits.

## III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the District Judge **BAR** Plaintiff George Sam Houston (a.k.a. Sam Houston) from filing any additional lawsuits in the Western District of Texas without first obtaining leave from a Federal District Judge in the Western District of Texas, Austin Division, or a Judge of the United States Court of Appeals for the Fifth Circuit.

SIGNED this 19th day of June, 2017.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE